UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| TRANS PACIFIC NATIONAL BANK,<br><br>   Plaintiff,<br><br>vs.<br><br>UBS AG; LINCOLN BENEFIT LIFE COMPANY and DOES 1-15, inclusive,<br><br>   Defendants. | Case No: C 09-4617 SBA<br><br>**ORDER GRANTING DEFENDANT UBS AG'S MOTION TO DISMISS**<br><br>Docket 9 |

Plaintiff Trans Pacific National Bank ("the Bank") filed the instant action in state court against defendants UBS AG ("UBS") and Lincoln Benefit Life Company ("Lincoln"). Defendants removed the action to this Court on the basis of diversity jurisdiction, 28 U.S.C. §§ 1332, 1441(b). The parties are presently before the Court on UBS' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b).

I.   **BACKGROUND**

   A.   **FACTUAL SUMMARY**

John Bui ("Bui") is an individual residing in California who is alleged to have falsely represented himself as a high net worth individual. (Compl. ¶ 10.) Bui, who is not a party, sought to borrow money from defendant UBS in order to pay the $4 million insurance premium ("the Premium") on a life insurance policy ("the Policy") he intended to obtain from Lincoln. (Id. ¶ 15.) The Policy had a cash surrender value of $3.2 million upon its issuance, which would increase by $300,000 per year. (Id.) The Policy was to pay $30 million upon Bui's death. (Id.) Bui's plan was to make the Policy part of an insurance trust he had created to

1 manage his assets.  (Id. ¶¶ 15-16.)  Before UBS was willing to loan funds to Bui, it required him to provide security for the loan obligation by obtaining a letter of credit naming UBS as the beneficiary.  (Id. ¶¶ 15-19.)  UBS also required Bui to assign his interest in the cash surrender value of the Policy.  (Id.)

In response to UBS' requests, Bui, through and his financial planner, identified as "Chiu," approached the Bank for its assistance in obtaining the letter of credit requested by UBS.  (Id. ¶¶ 10-13.)  Chui and representatives from UBS explained to the Bank that Bui had planned to include the Policy in his trust, and that he had arranged to finance the cost of the Premium through UBS.  (Id. ¶¶ 15, 16.)  Bui and Chiu also disclosed that UBS would be taking the cash surrender value of the Policy, and thus, there was a possibility that UBS would draw on the letter of credit.  (Id. ¶ 19.)  According to the Bank, it understood that its obligation under the letter of credit was limited to Bui's debt for the Premium owed to UBS (as opposed to any debt obligation owed by Bui to UBS).  (Id. ¶¶ 23, 24.)  In addition, the Bank claims that the letter of credit was supposed to serve as a *secondary* means of collateralizing the Premium, and that in the event of Bui's default, UBS would first draw on the cash surrender value of the Policy *before* drawing on the letter of credit.  (Id. ¶¶ 19, 23.)

The Bank arranged for Union Bank, one of its correspondent banks, to issue a $4.5 million letter of credit to UBS, which was accomplished on June 10, 2008.  (Id. ¶¶ 22, 26, Ex. 1.)  The letter of credit, which is fully integrated, was entered into by UBS and Union Bank only and includes a choice of law clause designating that New York law governs the agreement.  (Id., Ex. 1.)  Most of the letter of credit's text outlines the draw amount over time and the procedure UBS must follow to activate a draw on the letter of credit.  (Id.)  The letter of credit does not make any mention of the Bank, the Policy or the Premium; nor does it contain any limitation stating that it pertains *only* to Bui's debt to UBS for the $4 million Premium.  (Id.)  At some point before June of 2009, Bui defaulted on his loan obligation to UBS.  Thus, on June 30, 2009, UBS drew on the full value of the letter of credit.  (Id. ¶ 22.)

1  Union Bank honored the demand and paid $4.2 million to UBS, which the Bank, in turn,
2  remitted to Union Bank.  (Id.)[1]

3  **B.   PROCEDURAL HISTORY**

4  On August 21, 2009, the Bank filed a complaint in San Francisco County Superior
5  Court against Lincoln and UBS, claiming that it is entitled to the $3.2 million surrender value
6  of the Policy.  The Complaint alleges three causes of action.  The first cause of action seeks
7  declaratory relief to establish that the Bank has the right "to be subrogated to the rights of UBS
8  to the cash surrender value of the Policy …."  (Id. ¶ 31.)  The Bank contends that since it
9  essentially satisfied Bui's debts to UBS, the Bank has a right to seek remuneration in the place
10 of UBS for the cash surrender value of the Policy.  (Id. ¶¶ 31-33.)  Based on the same theory,
11 Plaintiff's second cause of action is for claim and delivery, which seeks the surrender of the
12 cash value of the Policy.  (Id. ¶¶ 35-38.)  Finally, the Bank has alleged a third cause of action
13 for negligent misrepresentation against UBS.  (Id. ¶¶ 39-45.)

14 On September 30, 2009, Lincoln, joined by UBS, removed the action to this Court on
15 the basis of the parties' diversity of citizenship.  On October 7, 2009, Lincoln filed a
16 counterclaim against the Bank, a cross-claim against UBS and an answer.  (Docket Nos. 7, 8.)
17 Lincoln also interpleaded $3,297,649.85 (presumably representing the cash surrender value of
18 the Policy) into the Registry of the Court.  (Docket 6.)  On the same date, UBS filed the instant
19 motion to dismiss the Complaint under Rule 12(b)(6).  Plaintiff filed an opposition on January
20 12, 2010, and on January 20, 2010, UBS filed it reply.  The matter is now ripe for adjudication.

21 **II.   LEGAL STANDARD**

22 A Rule 12(b)(6) dismissal for failure to state a claim can be based on either: (1) the lack
23 of a cognizable legal theory; or (2) insufficient facts to support a cognizable legal claim.
24 Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  The plaintiff's factual
25 allegations "must be enough to raise a right to relief above the speculative level."  Bell Atl.

26

---

27 [1] Thereafter, the Bank filed suit in Contra Costa County seeking judicial foreclosure on three properties that Bui had provided as collateral to the Bank.  (Def.'s Mot. at 6:16-19,
28 Defendant UBS' Req. for Judicial Notice, Ex. A, ¶ 10 and Ex. 1.)

Corp. v. Twombly, 550 U.S. 544, 556 (2007).  In deciding a Rule 12(b)(6) motion, the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice[.]"  Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold and Easement in the Cloverly Subterranean, Geological Formation, 524 F.3d 1090, 1096 (9th Cir. 2008).  The court is to "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).  If the complaint is dismissed, plaintiff generally should be afforded leave to amend unless it is clear the complaint cannot be saved by amendment.  See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

## III. DISCUSSION

### A. DECLARATORY RELIEF/SUBROGATION

#### 1. Choice of Law

The threshold question presented is whether California or New York law is applicable. "As a default, the law of the forum state will be invoked, and the burden is with the proponent of foreign law to show that the foreign rule of decision will further the interests of that state." CRS Recovery, Inc. v. Laxton, 600 F.3d 1138, 1142 (9th Cir. 2010).  The Bank argues that the choice of law clause contained in the letter of credit requires the application of New York law. The Court disagrees.  The Bank is not a signatory to the letter of credit and thus cannot enforce its terms.  See Paracor Finance, Inc. v. General Elec. Capital Corp., 96 F.3d 1151, 1165 (9th Cir. 1996).  The Bank concedes as much, but argues that it should be treated as if it were a party to the agreement because it communicated with UBS regarding the letter of credit and arranged for its issuance through Union Bank, a correspondent bank.  Pl.'s Opp'n at 5-6. However, Plaintiff fails to cite any decisional or statutory law to support its argument.   As such, the Court finds that California law applies here.

#### 2. Merits

"Subrogation is the substitution of one party in the place of another with reference to a lawful claim, demand or right.  It is a derivative right, acquired by satisfaction of the loss or

- 4 -

1   claim that a third party has against another." In re Hamada, 291 F.3d 645, 649 (9th Cir. 2002).
2   The subrogee is placed in the shoes of, and succeeds to the legal rights and claims of, the
3   subrogor with respect to the loss or claim that the subrogee paid on the subrogor's behalf. Id.
4   "[The] one who has been compelled to pay a debt which ought to have been paid by another is
5   entitled to exercise all the remedies which the creditor possessed against that other." Am.
6   Surety Co. of New York v. Bethlehem Nat. Bank, 314 U.S. 314, 317 (1941). A third party is
7   limited to subrogating only the rights that the creditor would be able to pursue. Id.

8         Here, the Court finds that the Bank's first cause of action for subrogation fails as a
9   matter of law. Under California law, a subrogee (i.e., the Bank) cannot recover benefits that
10  are greater than those to which the subrogor (i.e., Union Bank) is entitled. Fireman's Fund Ins.
11  v. Maryland Cas. Co., 21 Cal. App. 4th 1586, 1596 (1994) (subrogee assumes the same
12  contractual rights and liabilities held by the subrogor). In contravention of this principle, the
13  Bank seeks to enforce rights greater than those conferred upon Union Bank under the terms of
14  the letter of credit. Specifically, the Bank is, in effect, seeking to retroactively modify the letter
15  of credit by limiting its scope to Bui's debt to UBS on the Policy premium. In addition, the
16  Bank seeks to subordinate the letter of credit to the Policy's cash surrender value as collateral
17  to UBS. Neither of these limitations appears in the letter of credit, which is a fully integrated
18  document. See Knight v. Alefosio, 158 Cal. App. 3d 716, 724 (1984) (subrogation not
19  permitted where it would "override and displace the real contract of the parties, or where to do
20  so would be inconsistent with the terms thereof, or where the contract either expressly or by
21  implication forbids its application."). Because the Bank's subrogation claim depends upon an
22  untenable reading of the letter of credit, the Court concludes that the Bank's first cause of
23  action for declaratory relief must be dismissed.

24      **B.**    **CLAIM AND DELIVERY**

25        An action for claim and delivery is a provisional remedy that is an alternative to a
26  damages action for conversion. See 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 651 at
27  107-108. It is a method of recovering property that is wrongfully being withheld by another.
28  Id. In its second cause of action for claim and delivery, the Bank seeks recovery of the cash

1  surrender value of the Policy from UBS and/or Lincoln.  (Compl. ¶ 35.)  This claim is based on
2  their same legal theory as the first cause of action for subrogation, and therefore, fails for the
3  reasons stated above.
4        Moreover, the "value" of a policy is not the proper subject of a cause of action for claim
5  and delivery action.  In such a claim, "it is essential that the specific personal property claimed
6  should be described with a reasonable degree of certainty; and, as a rule, money is not the
7  subject of such an action unless it be marked or designated in some manner so as to make it
8  specific as regards its capability of identification."  Hillyer v. Eggers, 32 Cal.App. 764, 766
9  (1917) (citations omitted).  The Bank contends that the cash surrender value of the policy is a
10 specifically identifiable sum.  However, the Bank cites no authority for that proposition.  As
11 such, the Court concludes that Plaintiff has failed to state a claim for claim and delivery.

     **C.**    **NEGLIGENT MISREPRESENTATION**

"Negligent misrepresentation is a form of deceit, the elements of which consist of (1) a misrepresentation of a *past or existing* material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages."  Fox v. Pollack, 181 Cal.App.3d 954, 962 (1986) (emphasis added).  A claim for negligent misrepresentation is not actionable unless it rises to the level of a "positive assertion."  Diediker v. Peelle Financial Corp., 60 Cal.App.4th 288, 297-98 (1997).  "[A]n omission or implied assertion or representation is not sufficient." Apollo Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226, 243 (2007).

      In its Complaint, the Bank alleges that UBS failed to disclose (1) that Bui would have more than one outstanding obligation to UBS, (2) that UBS would view the cash surrender value of the Policy as collateral for other obligations owed by Bui to UBS (beyond just the Premium) and (3) that UBS considered the letter of credit as a means of securing repayment of

other loans made by UBS to Bui. (Compl. ¶ 40.)[2] Notably, the Bank does not allege that UBS made any affirmative misrepresentations of past or existing fact or that it had a legal duty to disclose such information; rather, it merely alleges that UBS should have disclosed such information. In the absence of any alleged positive assertions, such allegations do not give rise to a claim for negligent misrepresentation. In addition, the Bank has failed to allege any facts in its Complaint demonstrating that if UBS had disclosed the allegedly omitted information, it would not have entered into the transaction. See Shroyer v. New Cingular Wireless Servs., Inc., --- F.3d ---, 2010 WL 2089362 at *5 (9th Cir., May 26, 2010) (affirming dismissal of fraud claim based on California law where plaintiff's summarily alleged that "the nondisclosure was fraudulent"). Accordingly, the Court finds that the Bank's third cause of action for negligent misrepresentation must be dismissed.

## IV. CONCLUSION

UBS has demonstrated that the Bank has failed to allege facts sufficient to state a claim with respect to any of its three causes of action. Because no amendment can cure the deficiencies noted above, the Court dismisses all claims against UBS without leave to amend.

IT IS HEREBY ORDERED THAT:

1. UBS' motion to dismiss is GRANTED. The claims alleged against UBS are DISMISSED without leave to amend.

2. The remaining parties shall appear for a telephonic Case Management Conference scheduled for **July 28, 2010 at 3:00 p.m.** The parties shall meet and confer prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than ten (10) days prior to the Case Management Conference that complies with the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court. Plaintiff shall be responsible for filing the statement as well as

---

[2] In its opposition, Trans Pacific ignores the arguments made by UBS in it moving papers, and instead, merely quotes passages from Paragraphs 19, 23 and 24 from its Complaint and asserts that UBS misrepresented the "past or existing" facts as alleged therein. Pl.'s Opp'n at 11-12. As to paragraph 19, it refers to statements made by Bui and/or Chiu, not UBS. Paragraphs 23 and 24 largely repeat Paragraph 40, and thus fail for the reasons discussed above.

for arranging the conference call. All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

      3.      This Order terminates Docket 9.

IT IS SO ORDERED.

Dated: June 8, 2010

                                              SAUNDRA BROWN ARMSTRONG
                                              United States District Judge